IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEREMY BARTON, SPECIAL ADMINISTRATOR OF THE ESTATE OF FRANKLIN BARTON, JR., DECEDENT, )<br><br>Plaintiff, )<br><br>-v.- )<br><br>RANDOLPH COUNTY, EVERCOM, INC., and PBG, INC., )<br><br>Defendants. ) | Case No. 06-CV-622-JPG |

**MEMORANDUM AND ORDER
AND
<u>ORDER TO SHOW CAUSE</u>**

This cause comes before the Court on the motion of Defendant Randolph County to dismiss Counts I through VI of Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 4). Plaintiff Jeremy Barton has responded to the motion (Doc. 12).

**I.      Standard for Dismissal**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations as true and draws all reasonable inferences in favor of the plaintiff. *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005); *Holman v. Indiana*, 211 F.3d 399, 402 (7th Cir. 2000). The Court should not grant a motion to dismiss unless it appears beyond doubt that the plaintiff cannot prove his claim under any set of facts consistent with the complaint. *Brown*, 398 F.3d at 908-09; *Holman*, 211 F.3d at 405. "[I]f it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." *Brown*, 398 F.3d at 909 (internal quotations omitted); *see Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006).

Although liberal federal notice pleading standards ensure that even vague, non-detailed complaints can survive a motion to dismiss, they will not prevent dismissal of a complaint that pleads facts establishing that the defendant is entitled to prevail. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998); *Soo Line R.R. Co. v. St. Louis S.W. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997). That is what Randolph County believes has happened in this case. It asserts that even if everything the plaintiff alleges is true, it is still entitled to dismissal of the case against it because it is clear from the allegations that the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/1-101 *et seq.,* renders it immune from suit.

## II.     Facts Alleged

The complaint alleges the following facts, which the Court takes as true for the purposes of this motion.

On November 11, 2004, Franklin Barton, Jr. ("Barton"), the plaintiff's father, was housed in the Randolph County Jail. During his incarceration, Barton made statements indicating he was going to commit suicide. Nevertheless, a jail employee placed a telephone with a long metal cord in Barton's cell in an area of the cell where it could not be seen by prison personnel observing the cell. Prison personnel did not monitor the cell sufficiently to prevent Barton from using the cord to strangle and kill himself.

The plaintiff was appointed special administrator of Barton's estate. On July 21, 2006, he filed an amended complaint in the Randolph County Circuit Court alleging seven causes of action against Randolph County. The first three counts are brought under the Illinois Wrongful Death Act, 740 ILCS 180/0.01 *et seq.*, and allege causes of action for negligence in the condition and placement of the telephone in Barton's cell (Count I), willful and wanton misconduct for the

same conduct (Count II), and willful and wanton misconduct in failing to monitor Barton's cell knowing he had spoken of committing suicide (Count III). The next three counts seek funeral expenses based on the same conduct. Count VII is brought under 42 U.S.C. § 1983 for violation of unspecified Fourteenth Amendment rights.

Randolph County asks the Court to dismiss the claims against it based on various provisions of the Tort Immunity Act. Specifically, it argues that its employees cannot be liable under 745 ILCS 10/2-201 and 2-204, that neither it nor its employees can be liable under 4-103, and that under 745 ILCS 10/2-109, if its employees are not liable, it cannot be liable either. The plaintiff argues that these provisions of the Tort Immunity Act do not justify granting the motion to dismiss.

### III. Analysis

The gist of Randolph County's argument is that it cannot be liable because either it or its employees are entitled to immunity under the Tort Immunities Act. Of course, if Randolph County itself is entitled to immunity from certain claims, those claims must be dismissed. It is also true that if a Randolph County employee did or failed to do something and that act or omission caused an injury, Randolph County cannot be liable if its employee cannot. The Tort Immunity Act provides, in pertinent part, "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. Thus, if a Randolph County employee is entitled to immunity for injuries resulting from his acts or omissions, Randolph County is also immune from suits for the injuries.

The Court now turns to each provision of the Tort Immunity Act that Randolph County argues provides it or its employees immunity from the causes of action in this case. In examining the meaning of the statutory provisions, the Court tries to ascertain and give effect to

the legislature's intent in enacting the statute. *Collins v. Board of Trustees of Firemen's Annuity & Benefit Fund*, 610 N.E.2d 1250, 1253 (Ill. 1993). The best indication of this intent is the language of the statute, which should be read giving the words their plain and ordinary meaning. *Id.* The Court should also consider the purpose of the law when reading a statute and ascertaining its meaning. *Id.*

The Illinois legislature enacted the Tort Immunity Act to "protect local public entities and public employees from liability arising from the operation of government." 745 ILCS 10/1-101.1(a). The Tort Immunity act should be strictly construed. *See Snyder v. Curran Township*, 657 N.E.2d 988, 994 (Ill. 1995).

    A.    <u>745 ILCS 10/2-201</u>

Randolph County argues that 745 ILCS 10/2-201 immunizes its employees from liability based on the facts alleged in Counts I, II, IV and V. That provision of the Tort Immunity Act states:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

In order for a public employee to be immune under § 2-201, the employee must hold a position that involves *either* determining policy or exercising discretion, but the act or omission causing the injury must be *both* a determination of policy and an exercise of discretion. *Harinek v. 161 N. Clark St. Ltd. P'ship*, 692 N.E.2d 1177, 1181 (Ill. 1998). The parties focus on the latter requirement – that the acts giving rise to the injury be a determination of policy and an exercise of discretion.

Randolph County argues that "permitting detainees to use the . . . telephone while in their jail cells and unsupervised . . . was the result of the discretionary policy determination of [its]

employees regarding operation and control of the Randolph County Jail." Mem. Supp. Def.'s Mot. Dismiss at 6. The plaintiff argues that his complaint does not foreclose proving a set of facts where jail personnel's acts were not policy determinations or exercises of discretion. The Court has carefully reviewed the Amended Complaint and has determined that there may be a set of facts consistent with those pled in the complaint under which Randolph County may not be entitled to immunity under § 2-201.

### 1. Determination of Policy

A policy determination is a decision that which requires balancing competing interests and making judgment calls about the best solution in light of those interests. *Harinek*, 692 N.E.2d at 1181; *West v. Kirkham*, 588 N.E.2d 1104, 1109 (Ill. 1992).

Jail management decisions like when and how to allow inmates to use the telephone and the type of telephone to allow them to use are policy determinations. They are undoubtedly the result of a decisionmaking process that balances the rights and desires of inmates to communicate with those outside the jail with the cost of the telephone service and supervision necessary to provide inmates access to such service as well as the safety and security of the institution. Thus, decisions about inmate access to a telephone are generally policymaking decisions.

### 2. Discretionary Act

"[D]iscretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." *Snyder v. Curran Township*, 657 N.E.2d 988, 993 (Ill. 1995); *accord Harinek*, 692 N.E.2d at 1182. Discretionary acts generally involve exercising

5

"personal deliberation and judgment in deciding whether to perform a particular act, or how and in what manner that act should be performed." *Wrobel v. City of Chicago*, 742 N.E.2d 401, 406 (Ill. App. Ct. 2000) (citing *D.M. by C.H. v. National Sch. Bus Serv.*, 713 N.E.2d 196, 200 (Ill. App. Ct. 1999)). Ministerial acts, on the other hand, are " those acts that are 'absolute, certain and imperative, involving merely the execution of a set task' so that 'nothing remains for judgment or discretion.'" *Wrobel*, 742 N.E.2d at 407 (quoting *In re Chicago Flood Litig.*, 680 N.E.2d 265, 272 (Ill. 1997)). "The classification of acts as either discretionary or ministerial escape [sic] any precise formulation and must be made on a case-by-case basis in light of the particular facts and circumstances presented." *Wrobel*, 742 N.E.2d at 406 (citing *Snyder*, 657 N.E.2d at 992-93).

    It is unclear at this stage whether providing Barton with a telephone on November 11, 2004, and the manner in which it was provided, was a discretionary or ministerial act. For example, if the decision whether to provide a particular inmate a telephone and how closely to supervise him while using the telephone is left to the discretion of the particular jail worker on duty at the time, such decisions would involve the exercise of judgment about whether providing the phone or supervision would compromise the safety of the inmate himself and the institution as a whole. On the other hand, if the decision whether to provide an inmate a telephone and how to supervise him is governed by a detailed jail policy, it may be a ministerial act. For example, a policy that requires a jail worker to give the inmate a particular type of telephone at a specific time of day for a set period of time and to keep him in sight during the entire time he uses the telephone would be "absolute, certain and imperative, involving merely the execution of a set task," *In re Chicago Flood Litig.*, 680 N.E.2d at 272, and leaving no room for judgment or discretion. While the possibility that such a detailed policy exists remains open, the Court

6

cannot say that Randolph County is entitled to immunity under § 2-201.

      B.    <u>745 ILCS 10/2-204</u>

Randolph County argues that 745 ILCS 10/2-204 immunizes its employees from liability based on the facts alleged in Counts I through VI. That provision of the Tort Immunity Act states:

> Except as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person.

Generally, this provision is applied to immunize a supervisor from *respondeat superior* liability for injuries caused by the acts or omissions of the employees he supervises. *See, e.g., Payne v. Churchich*, 161 F.3d 1030, 1044 (7th Cir. 1998); *Catchings v. City of Chicago*, No. 04 C 6110, 2006 WL 1371440, *9 (N.D. Ill. May 15, 2006). It has also occasionally been applied to immunize a defendant from liability for injuries caused by the acts or omissions of a co-worker. *See e.g., Thompson v. City of Chicago*, No. 01 C 8883, 2004 WL 1197436, *7-*8 (N.D. Ill. May 28, 2004).

Randolph County argues that Barton caused his own injuries by strangling himself with the telephone cord and is therefore "another person" under the plain language of § 2-204. Thus, it argues, Randolph County employees are immune from liability under § 2-204 and Randolph County itself is, in turn, immune under § 2-109. The plaintiff does not oppose this interpretation. Instead, the plaintiff argues that § 2-204 does not *directly* provide immunity to Randolph County because its provisions only apply to public employees, not local public entities themselves. *See* 745 ILCS § 10/1-207 (defining "public employee" as an employee of a "local public entity").

As a preliminary matter, the plaintiff is correct that § 2-204 does not apply to local public

7

entitles and therefore cannot *directly* immunize Randolph County. *See Thomas v. Cook County Sheriff*, 401 F. Supp. 2d 867, 875 (N.D. Ill. 2005). However, Randolph County is immune under § 2-109 if its employees are immune under § 2-204. Thus, the critical question is whether the relevant Randolph County employees are immune under § 2-204.

The Court does not think they are. The Court does not accept Randolph County's application of § 2-204 in this case based on acts committed by the decedent himself. First, the language of the statute is not as clear as Randolph County makes it out to be. Randolph County argues that "another person" plainly means "someone besides the defendant," but the Court believes that "another person" could just as easily mean "someone besides the defendant and the injured party." Randolph County has offered no caselaw to support its interpretation, and the Court is hesitant to accept it in light of the extensive history of the statute applying it primarily to prevent supervisory liability under a *respondeat superior* theory and occasionally to prevent co-worker liability, but never, at least as far as the Court can tell, to prevent liability based on contributory negligence or other fault of the injured party.

Second, and more importantly, even if Randolph County's interpretation is correct, the plaintiff may still be able to prove a set of facts under which a Randolph County employee's act or omission was one of multiple causes of Barton's injuries. Thus, Barton's death may not have been completely caused by his own hand even if he were to be considered "another person."

For these reasons, the Court finds that Randolph County is not immune from the plaintiff's claims in Counts I through VI under § 2-204.

    C.    <u>745 ILCS 10/4-103</u>

Finally, Randolph County argues that 745 ILCS 10/4-103 immunizes it and its employees from liability based on the facts alleged in Counts I through VI. That provision of the Tort

8

Immunity Act states:

> Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein. Nothing in this Section requires the periodic inspection of prisoners.

The immunity provided by § 4-103 was intended by the Illinois legislature to be absolute. *Payne v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998) (citing *Jefferson v. Sheahan*, 664 N.E.2d 212, 215-17 (Ill. App. Ct. 1996)).

Randolph County argues that its employees cannot be liable for any count, whether based on providing a dangerous telephone to Barton knowing he was suicidal or failing to supervise him while he had the telephone in his cell, because § 4-103 provides immunity from liability arising from just such conduct, the "failure to provide sufficient equipment,. . . supervision or facilities." The plaintiff argues that § 4-103 does not apply because he alleges not just simple negligence but an actual willful and wanton placing of Barton in a dangerous condition.

Neither party seriously disputes that § 4-103 provides immunity from liability based on the acts or omissions alleged to be negligent in this case, that is, those that serve as the basis for Counts I and IV. *See Payne*, 161 F.3d at 1044-45; *Fraley v. City of Elgin*, 621 N.E.2d 276, 280 (Ill. App. Ct. 1993). Thus, the Court will dismiss Counts I and IV. The remaining counts, however, allege willful and wanton misconduct, and the parties dispute whether § 4-103 applies to willful and wanton misconduct. It is undisputed that the statutory provision, as written, contains no such exception. The parties argue whether a judicially created exception exists.

The Illinois Appellate Court squarely addressed this issue in *Jefferson v. Sheahan*, 664 N.E.2d 212, 213 (Ill. App. Ct. 1996). There, after a detainee had told jail personnel that he was dangerous to himself and others, they provided him with a steel cane and failed to supervise him sufficiently to prevent him from attacking the plaintiff with the cane. *Jefferson*, 664 N.E.2d at

9

213-14. The plaintiff alleged that the jail personnel thereby committed willful and wanton misconduct and argued that a judicially created exception to § 4/103 applied. *Id.* at 214. The trial court certified the following question to the Appellate Court: "While the immunity provided by 745 ILCS 10/4-103 does not contain a written exception for willful and wanton conduct, can a court judicially create such an exception to this provision and does such an exception exist?" *Id.* at 214. It answered, "No." Noting the impropriety of reading an exception into a statute that conflicts with the statute's clearly expressed legislative intent, *see Certain Taxpayers v. Sheahen*, 256 N.E.2d 758, 764 (Ill. 1970), the *Jefferson* court held that "a judicial 'finding' of an exception for willful and wanton conduct where none was expressly provided by the legislature contravenes a court's duty to give effect to legislative intent." *Jefferson*, 664 N.E.2d at 214. It noted that other provisions of the Tort Immunity Act provided exceptions for willful and wanton activity, demonstrating that the Illinois legislature knew how to provide for such an exception had it intended to. *Id.* at 214-15. That § 4-103 did not have such a provision reflected the legislature's lack of intent to create one. *Id.* Thus, the *Jefferson* court rejected any exception to § 4-103 for willful and wanton misconduct. *Id.* at 217.

*Jefferson*'s conclusion is consistent with the Illinois Supreme Court's later holding in *In re Chicago Flood Litigation*, 680 N.E.2d 265 (Ill. 1997). In that case, the Illinois Supreme Court examined the question of whether there was a judicially created exception to § 2-201 of the Tort Immunity Act (discussed in part III.A of this order). In the *Chicago Flood Litigation* case, the court relied on the plain language of § 2-201, finding it unambiguous. The court stated that that provision of the Tort Immunity Act

> does not contain an immunity exception for willful and wanton misconduct.
> Where the legislature has chosen to limit an immunity to cover only negligence, it
> has unambiguously done so. Since the legislature omitted such a limitation from
> the plain language of section 2-201, then the legislature must have intended to

10

immunize liability for both negligence and willful and wanton misconduct. *In re Chicago Flood Litig.*, 680 N.E.2d at 273.

The Court finds § 4-103 as equally unambiguous as § 2-201.  Neither creates an exception for willful and wanton misconduct, and *In re Chicago Flood Litigation* forbids the Court from creating one.

Neither *Payne v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998), nor *Fraley v. City of Elgin*, 621 N.E.2d 276 (Ill. App. Ct. 1993), are inconsistent with this conclusion because neither case addressed the issue before the Court in this case.  Both cases involved a detainee committing suicide and alleging improper acts, both negligent and willful and wanton, by his custodians.  The *Payne* and *Fraley* courts both dismissed the plaintiff's negligence claims based on § 4/103, but both relied on the plaintiff's inadequate pleading of a willful and wanton misconduct theory to dismiss those claims.  *Payne*, 161 F.3d at 1044;  *Fraley*, 621 N.E.2d at 280;  *see Jefferson*, 664 N.E.2d at 216 (acknowledging that *Fraley*'s willful and wanton claims were dismissed for insufficient pleading not because of § 4-103).

Likewise, the two other cases cited by the plaintiff, *Thomas v. Cook County Sheriff*, 401 F. Supp. 2d 867 (N.D. Ill. 2005), and *Pico v. County of Cook*, No. 04 C 3559, 2004 WL 3670968 (N.D. Ill. Dec. 14, 2004), are distinguishable.  Both of those cases involved allegations of willful and wanton failure to provide medical treatment and therefore considered § 4-103 in conjunction with § 4-105 of the Tort Immunity Act, 745 ILCS 10/4-105.  That provision contains an exception from immunity for willful and wanton acts relating to the provision of medical care and is not at issue in this case.

For these reasons, the Court finds that Randolph County is immune from liability for Counts I through VI by virtue of § 4-103 of the Tort Immunity Act.  The Court will therefore

11

dismiss those claims.

**IV.     Conclusion**

For the foregoing reasons, the Court **GRANTS** Randolph County's motion to dismiss (Doc. 4), **DISMISSES** Counts I through VI **with prejudice,** and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.  Count VII remains pending against Randolph County.

In addition to the aforementioned matters, the Court considers a case management issue. The plaintiff filed this action in state court in November 2005 and removed this case to federal court in August 2006.  The record reflects that defendant PBG, Inc. was served with the summons and complaint in December 2005 and/or January 2006, that defendant PBG, Inc. did not file an answer or otherwise respond to the complaint in a timely manner, yet that the plaintiff has not moved for default pursuant to Federal Rule of Civil Procedure 55(a).

The Court hereby **ORDERS** the plaintiff to **SHOW CAUSE** on or before January 26, 2007, why the case against defendant PBG, Inc. should not be dismissed for lack of prosecution pursuant to Federal Rule of Civil Procedure 41(b) and the Court's inherent authority to manage its docket.  *See In re Bluestein & Co.*, 68 F.3d 1022, 1025 (7th Cir. 1995).  Failure to respond in a timely manner to this order may result in dismissal of the action against defendant PBG, Inc. The plaintiff's filing of a proper motion for default pursuant to Rule 55(a) shall be a satisfactory response to this order to show cause.

**IT IS SO ORDERED.**
**DATED this 17th day of January, 2007.**

                                        s/ J. Phil Gilbert
                                        **UNITED STATES DISTRICT JUDGE**